Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/18/2019 08:07 AM CDT

State of Nebraska, appellee, v.
Steven C. Kruse, appellant.
___ N.W.2d ___

Filed July 26, 2019.    No. S-18-1011.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Search and Seizure: Judgments: Appeal and Error.** Application of the good faith exception to the exclusionary rule is a question of law. On a question of law, an appellate court reaches a conclusion independent of the court below.

3. **Search Warrants: Police Officers and Sheriffs.** When a search warrant has been issued, the applicability of the good faith exception turns on whether the officers acted in objectively reasonable good faith in reliance on the warrant.

4. **Search Warrants: Affidavits: Police Officers and Sheriffs: Appeal and Error.** In assessing an officer's good faith in conducting a search under the warrant, a reviewing court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.

5. **Motions to Suppress: Search Warrants: Affidavits: Police Officers and Sheriffs: Evidence.** Under the good faith exception to the exclusionary rule, evidence may be suppressed if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on

an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

6. **Appeal and Error.** As a general rule, a Nebraska appellate court does not consider an argument or theory raised for the first time on appeal.

7. **Judgments: Records: Appeal and Error.** Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that articulated by the trial court, an appellate court will affirm.

8. **Constitutional Law: Search and Seizure: Proof.** The State has the burden of showing the good faith exception applies to an otherwise unconstitutional search.

9. **Search and Seizure: Police Officers and Sheriffs.** The good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite a magistrate's authorization.

10. **Police Officers and Sheriffs: Presumptions.** Officers are assumed to have a reasonable knowledge of what the law prohibits.

11. **Search and Seizure: Probable Cause: Proof: Records: Appeal and Error.** The inquiry into whether the good faith exception applies normally involves an examination of the same facts as the probable cause inquiry, and thus in the vast majority of cases, an appellate court will be able to determine whether the State has met its burden on the existing record.

12. **Search Warrants: Affidavits: Police Officers and Sheriffs: Probable Cause: Appeal and Error.** When evaluating whether a warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an appellate court should address whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant.

Appeal from the District Court for Seward County, James C. Stecker, Judge, on appeal thereto from the County Court for Seward County, C. Jo Petersen, Judge. Judgment of District Court affirmed.

Gregory C. Damman, of Blevens & Damman, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

After a stipulated bench trial before the county court, Steven C. Kruse was convicted of driving under the influence with a blood alcohol concentration of .15 or higher, first offense. Kruse appealed to the district court, assigning the county court erred in overruling his motion to suppress the blood test and arguing the affidavit supporting the warrant for the blood draw was insufficient to support a finding of probable cause. The district court affirmed the conviction, and Kruse now appeals to this court. We affirm.

## I. BACKGROUND

On August 31, 2017, at 5:39 p.m., Seward police officers Chase Parmer and Bryce Johnson were dispatched to the scene of an injury accident in Seward, Nebraska. They arrived at the scene about 2 minutes later and observed two severely damaged vehicles: a 2002 Hyundai Sonata and a 1999 Mercedes Benz. Parmer observed a man, later identified as Kruse, slumped over in the driver's seat of the Mercedes Benz. The officer's body camera depicts this as well. Kruse was subsequently taken via ambulance to receive medical attention and was not able to submit to either standardized field sobriety testing or a preliminary breath test at the scene.

Based on information learned from the accident scene, Parmer executed an affidavit seeking a search warrant to obtain a sample of Kruse's blood. Parmer was identified as the affiant only by his signature. Parmer averred that a search warrant was being requested for Kruse's blood because Kruse had been involved in an "injury vehicle accident" and was suspected of committing the crime of driving under the influence. Parmer averred that the alcoholic content of blood will drop, on average, at a rate of "0.015 per hour" and for that reason, blood samples are best taken at or near the time of arrest. In support of the warrant, the affidavit recited the following facts:

On August 31, 2017, your affiant was on duty for the Seward Police Department, working the 1100-2100 hour shift. At approximately 1741 hours, your affiant was dispatched to the area of 8th and Jackson Street in Seward, Seward County, Nebraska, in response to an injury vehicle accident that was reported. Law Enforcement approached the vehicle and got an odor of an alcoholic beverage emitting from his person and inside the vehicle. Rescue personnel who were tending to Kruse also informed Law Enforcement that they detected an odor of alcohol emitting from his person.

Upon contact with Kruse, your affiant observed Kruse to be incoherent and unable to submit to standardized field sobriety tests or a preliminary breath test since he was currently being treated by medical personnel on scene and was subsequently transported to the hospital for further evaluation.

The county court issued the search warrant, after which Parmer and Johnson went to the hospital where Kruse was still being treated for his injuries. Kruse was asked to submit to a preliminary breath test, and he agreed. That test returned a result greater than .15 grams of alcohol per 210 milliliters of breath. Parmer and Johnson then served the search warrant on Kruse, and two vials of his blood were drawn at 8 p.m. Testing showed Kruse's blood alcohol level was .168, over twice the legal limit. Once Kruse was medically released, he was arrested for driving under the influence.

### 1. County Court Proceedings

Subsequently, a complaint was filed charging Kruse with one count of driving under the influence, .15 or over, a Class W misdemeanor. Kruse pled not guilty and moved to suppress all evidence seized as a result of the search warrant. His motion to suppress challenged the validity of the warrant, alleging it was "issued on the basis of an affidavit that failed to establish probable cause that [Kruse] was engaged in criminal activity." At the suppression hearing, the search warrant

and attached affidavit were received into evidence, but no testimony was offered.

In overruling the motion to suppress, the county court noted the affidavit was "poorly written in many aspects," but found that when "reviewed as a whole," the affidavit was nevertheless sufficient to establish probable cause that Kruse was operating a motor vehicle while under the influence of alcohol. The county court expressly rejected Kruse's arguments that the affidavit was insufficient because: (1) It did not sufficiently identify the affiant; (2) it did not sufficiently identify the person to be searched; (3) it did not sufficiently identify the vehicle as a motor vehicle; (4) it did not sufficiently identify the time or location of any motor vehicle accident; and (5) it did not sufficiently identify Kruse as the driver of a motor vehicle.

The county court's order did not reference the good faith exception recognized by the U.S. Supreme Court in *United States v. Leon.*[1] *Leon* held that even if the affidavit supporting the warrant is insufficient, evidence seized pursuant to the warrant need not be suppressed if officers acted in objectively reasonable good faith in reliance upon the warrant.[2]

Thereafter, the parties held a trial on stipulated facts. Exhibits were received pursuant to the stipulation, and Kruse renewed his motion to suppress. In an order entered April 17, 2018, the county court overruled the renewed motion to suppress and found Kruse guilty of driving under the influence with a blood alcohol concentration of .15 or higher, first offense. Kruse was sentenced to 9 months' probation and his operator's license was revoked for 1 year.

## 2. Appeal to District Court

Kruse appealed to the district court, assigning only that the county court erred in overruling his motion to suppress.

---

[1] *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

[2] *Id.*

Before the district court, Kruse argued the affidavit was insufficient to support a finding of probable cause because it lacked (1) information regarding the identity of the affiant, (2) information regarding the affiant's training and experience, (3) information that the referenced accident occurred on a highway or private property open to public access, (4) specificity as to the nature of the injury accident, (5) the identity of the officer who approached and smelled the odor of alcohol, (6) the identity of the person who smelled of alcohol, (7) facts showing that anyone was driving a motor vehicle, (8) facts showing the time of the contact, and (9) facts showing that Kruse was driving.

The court addressed each of these grounds individually, and found none had merit. The court acknowledged the affidavit was "thin on detail," but it concluded, applying a totality of the circumstances test,[3] that the affidavit supported a finding of probable cause. Alternatively, the district court held the *Leon* good faith exception applied, because the officers acted reasonably in relying on the warrant.

Kruse timely appealed the district court's affirmance, and we moved the case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Kruse assigns, renumbered and restated, that the district court erred in (1) finding the affidavit was sufficient to support probable cause and (2) applying the *Leon* good faith exception to the search warrant requirement.

## III. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[4] Regarding historical facts, an appellate court reviews the trial

---

[3] See *State v. Hildago*, 296 Neb. 912, 896 N.W.2d 148 (2017).

[4] *Id.*

court's findings for clear error.[5] But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[6]

[2] Application of the good faith exception to the exclusionary rule is a question of law.[7] On a question of law, an appellate court reaches a conclusion independent of the court below.[8]

## IV. ANALYSIS

Kruse argues that several deficiencies in Parmer's affidavit rendered it insufficient to support a finding of probable cause. These are the same deficiencies he argued to both the county and district courts. When reviewing the affidavit, the county court remarked that it was "poorly written in many aspects," and the district court agreed that it was "thin on detail." We agree with those characterizations. But we do not engage in a detailed discussion of whether the affidavit was sufficient to support a finding of probable cause,[9] because we conclude that, even if the affidavit was deficient, the district court properly applied the *Leon* good faith exception.[10]

### 1. Good Faith Exception

Kruse argues the evidence should be suppressed because it was obtained in violation of the Fourth Amendment. But the Fourth Amendment does not expressly preclude the use

---

[5] *Id.*

[6] *Id.*

[7] *State v. Hatfield*, 300 Neb. 152, 912 N.W.2d 731 (2018).

[8] *Id.*

[9] See *Carey v. City of Hastings*, 287 Neb. 1, 11, 840 N.W.2d 868, 876 (2013) ("[a]n appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it").

[10] See *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014) (recognizing court can analyze good faith exception before analyzing whether Fourth Amendment violated).

of evidence obtained in violation of its commands.[11] Thus, the exclusion of evidence obtained in violation of the Fourth Amendment is "'not a personal constitutional right.'"[12] Rather, the exclusionary rule operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.[13]

Because of the deterrent purpose of the exclusionary rule, the U.S. Supreme Court has recognized a number of circumstances in which the rule does not apply. In *Leon*, the Court reasoned the exclusionary rule is designed to deter police misconduct, rather than to punish the errors of judges and magistrates, and thus concluded a good faith exception to the exclusionary rule should apply when police officers act in objectively reasonable good faith in reliance upon a search warrant.[14] The Court has subsequently held the good faith exception also applies when police conduct a search in reasonable reliance on a subsequently invalidated statute,[15] when police conduct a search in reasonable reliance on binding appellate precedent,[16] and when police reasonably rely on erroneous information in a database maintained by judicial employees.[17]

[3-5] In a case such as this where a warrant was issued, the applicability of the good faith exception turns on whether the officers acted in objectively reasonable good faith in reliance on the warrant. In assessing an officer's good faith in

---

[11] *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017).

[12] *Davis v. United States*, 564 U.S. 229, 236, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011), quoting *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

[13] *Hoerle, supra* note 11.

[14] *Leon, supra* note 1; *State v. Tompkins*, 272 Neb. 547, 723 N.W.2d 344 (2006), *modified on denial of rehearing* 272 Neb. 865, 727 N.W.2d 423 (2007).

[15] *Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987).

[16] *Davis, supra* note 12.

[17] *Arizona v. Evans*, 514 U.S. 1, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995).

conducting a search under the warrant, a reviewing court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.[18] Evidence may be suppressed if (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his or her reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his or her judicial role, (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or (4) the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.[19]

Kruse argues that the good faith exception should not apply in this case for two reasons. First, he contends the State did not raise the good faith exception before the county court and it was error for the district court to consider the exception for the first time on appeal.[20] Second, he contends the good faith exception does not apply to the facts of this case, because the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Notably, Kruse does not argue that any issues of fact exist as to whether the exception applies, but instead limits his arguments to the stipulated evidence in the record.

## 2. Raising Good Faith on Appeal

We first address Kruse's argument that the district court erred in considering the good faith exception for the first time

---

[18] See *Tompkins, supra* note 14.

[19] *Id.*

[20] See, *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018); *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015) (appellate courts generally do not consider arguments and theories raised for first time on appeal).

on appeal. As noted, the county court was the trial court in this proceeding, and the district court was acting as an intermediary appellate court. As a general rule, an appellate court will not consider an argument or theory that is raised for the first time on appeal.[21]

Our record does not allow us to conclusively determine whether Kruse is correct that the good faith exception was not argued before the county court. The parties presented their arguments to the county court in briefs, and those briefs are not in our record. However, Kruse conceded during oral argument before this court that the issue of good faith was raised by the State before the district court sitting as an appellate court.

We thus assume the first time the *Leon* good faith exception was raised in this case was while it was pending before the district court on appeal. And we consider the question presented to be whether it was proper for the district court, under those circumstances, to consider and apply the exception.

### (a) *State v. Tompkins*

Kruse argues the district court erred in considering the good faith argument when it was not raised to the trial court. He relies on *State v. Tompkins*,[22] in which we considered whether it was appropriate for the Nebraska Court of Appeals to consider, sua sponte, whether the good faith exception applied. In *Tompkins*, the defendant argued the affidavit used to obtain a search warrant lacked sufficient probable cause. The State disagreed, but did not raise the good faith exception to the district court. The district court found the affidavit was sufficient, and the defendant appealed. The Court of Appeals found the affidavit was insufficient, but then, on its own, considered and applied the good faith exception even though the State had not raised it on appeal. On further review, we held this was error. We framed the question as "whether an appellate court can

---

[21] *Id.*

[22] *Tompkins, supra* note 14.

reach the *Leon* good faith exception without the State's having raised the issue," and we held, for "policy reasons," that when the State fails to assert the good faith exception on appeal, it waives it.[23]

We reasoned in *Tompkins* that when the State fails to raise the *Leon* good faith exception on appeal, the defendant is denied an opportunity to argue against its application. In asserting this rationale, we generally acknowledged that "requiring the State to raise the good faith issue at the appellate level does not place an onerous burden on the State," because "the inquiry into good faith normally involves an examination of the same facts as the probable cause inquiry," and thus the State needs to "do little more than assert good faith to have it considered by the appellate court."[24] But we nevertheless found the defendant should have an opportunity to argue against the application of the exception, and he or she is prevented from doing so if the court raises the issue sua sponte.[25]

Our subsequent cases have recognized that the holding in *Tompkins* was narrow and only prevents an appellate court from raising the good faith exception on its own motion. In *State v. Nielsen*,[26] the defendant relied on *Tompkins* and argued the State could not argue the good faith exception on appeal, because it had not raised the argument to the trial court. We rejected this argument by noting that the record showed the State had raised the exception to the trial court. We then explained in dicta:

> Although we do not reach the State's argument that raising good faith for the first time on appeal is sufficient, [the defendant's] contrary premise seems unconvincing. Our decision in *State v. Tompkins* declined to answer the precise question. We recognize that the State has the

---

[23] *Id.* at 548-49, 723 N.W.2d at 346.

[24] *Id.* at 553, 723 N.W.23d 349.

[25] See *id.*

[26] *State v. Nielsen*, 301 Neb. 88, 917 N.W.2d 159 (2018).

burden of showing that the good faith exception applies. In *Tompkins*, we stressed that an appellate court *on its own motion* cannot consider the good faith exception. . . . But we also said that "at the appellate level, the State has ample opportunity to raise the *Leon* good faith exception." This would suggest that in order for an appellate court to consider the good faith exception, the State can raise it either at the trial court or on appeal.[27]

In *State v. Henderson*,[28] we again emphasized the narrow holding in *Tompkins*. In *Henderson*, the defendant argued his appellate counsel was ineffective for not arguing that *Tompkins* prevented the State from arguing the good faith exception for the first time on his direct appeal. We found the record did not factually support the defendant's assertion, because his own counsel had argued against the applicability of the good faith exception at trial. And although we did not reach the issue argued by the defendant, we again noted that *Tompkins* "does not answer the question of whether the State may raise the good faith exception for the first time on appeal."[29]

Because the record before us does not show whether the good faith argument was raised to the trial court, but does show it was raised to the appellate court, we must determine whether, in this case, it was proper for the appellate court to consider the State's argument that the good faith exception applies. In doing so, we necessarily address issues not considered by *Tompkins*.

### (b) Existing Record Is Sufficient to Determine Good Faith

[6,7] We also do so in light of well-recognized propositions of law. As a general rule, a Nebraska appellate court does not consider an argument or theory raised for the first time

---

[27] *Id.* at 93, 917 N.W.2d at 163, quoting *Tompkins, supra* note 14.

[28] *State v. Henderson*, 301 Neb. 633, 920 N.W.2d 246 (2018).

[29] *Id.* at 659, 920 N.W.2d at 267.

on appeal.[30] This is primarily so because a trial court cannot commit error regarding an issue that was never presented to it or submitted for its disposition.[31] At the same time, however, where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that articulated by the trial court, an appellate court will affirm.[32]

[8-10] The State has the burden of showing the good faith exception applies to an otherwise unconstitutional search.[33] We have said that the good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite a magistrate's authorization.[34] Officers are assumed to have a reasonable knowledge of what the law prohibits.[35] In assessing the good faith of an officer conducting a search warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.[36]

[11] As we explained in *Tompkins*, the inquiry into whether the good faith exception applies "normally involves an examination of the same facts as the probable cause inquiry,"[37] and thus in the vast majority of cases, an appellate court will be able to determine whether the State has met its burden on the existing record. This is one of those cases. As noted, although Kruse argues the good faith exception does not apply to this case, he does not argue that any issues of fact exist as to

---

[30] See *Ortega, supra* note 20.

[31] See *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010).

[32] See *State v. Marshall*, 269 Neb. 56, 690 N.W.2d 593 (2005).

[33] See *Nielsen, supra* note 26.

[34] *State v. Henderson*, 289 Neb. 271, 854 N.W.2d 616 (2014).

[35] *Id.*

[36] *Id.*

[37] *Tompkins, supra* note 14, 272 Neb. at 553, 723 N.W.2d at 349.

whether the exception applies, but instead limits his arguments to the proved or admitted facts in the record.

Under similar circumstances, other jurisdictions have found that the applicability of the good faith exception recognized in *Leon* and its progeny may be raised for the first time on direct appeal. In *United States v. Sager*,[38] a federal district court reversed the convictions of two defendants, reasoning the evidence used against them was seized pursuant to a warrant based on an insufficient affidavit, and remanded the matter for a new trial. Shortly thereafter, the U.S. Supreme Court decided *Leon*, and the government petitioned for rehearing. Upon granting rehearing, the Eighth Circuit found *Leon* was the applicable law, and reasoned it could determine whether the good faith exception announced in *Leon* applied without conducting further proceedings. In doing so, the Eighth Circuit expressly reasoned that *Leon* involves issues of objective reasonableness, not subjective good faith, and further found that all the facts necessary to such a determination had been "fully ventilated."[39] It also emphasized that the defendants did not "suggest any new fact relevant to [the analysis] that is not already in the record."[40]

In *U.S. v. Gomez*[41] a defendant contended evidence seized as a result of a traffic stop should have been suppressed. The district court denied his motion, relying on *U.S. v. Harrison*.[42] On appeal, the Second Circuit found the U.S. Supreme Court had abrogated *Harrison* in *Rodriguez v. U.S.*[43] and that the district court should have applied *Rodriguez* and found the stop was unconstitutional. But it allowed the government to raise the

---

[38] *United States v. Sager*, 743 F.2d 1261 (8th Cir. 1984).

[39] *Id*. at 1265.

[40] *Id*.

[41] *U.S. v. Gomez*, 877 F.3d 76 (2d Cir. 2017).

[42] *U.S. v. Harrison*, 606 F.3d 42 (2d Cir. 2010).

[43] *Rodriguez v. U.S.*, ___ U.S. ___, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015).

good faith exception on appeal, in part because "'the argument presents a question of law and there is no need for additional fact-finding.'"[44]

In *State v. Schmidt*,[45] the defendant moved to suppress the results of a warrantless blood test and the trial court denied his motion. While the case was pending on appeal, the U.S. Supreme Court held in *Birchfield v. North Dakota*[46] that the Fourth Amendment does not permit warrantless blood tests. The State then sought to assert the applicability of the good faith exception for the first time on appeal. The Kansas Court of Appeals noted the defendant had not pointed to any disputed facts or made any argument why the good faith exception could not be addressed on direct appeal. The court thus held the State's good faith argument could be invoked for the first time on appeal, because although it was a newly asserted theory, it involved only a question of law that was based on proved or admitted facts and was determinative of the case.[47]

Although this court did not confront the issue as directly as the court in *Schmidt*, we have also considered the good faith exception in a post-*Birchfield* case, and it was also raised by the State for the first time on appeal. In *State v. Hatfield*,[48] the defendant was convicted in county court of driving under the influence based in part on a warrantless blood draw. He appealed to the district court. After appellate briefing in the district court was concluded, the U.S. Supreme Court decided *Birchfield*, and the defendant then asked the district court to apply that decision. It did so, finding that

---

[44] *Gomez, supra* note 41, 877 F.3d at 95, quoting *Bogle-Assegai v. Connecticut*, 470 F.3d 498 (2d Cir. 2006).

[45] *State v. Schmidt*, 53 Kan. App. 2d 225, 385 P.3d 936 (2016).

[46] *Birchfield v. North Dakota*, ___ U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016).

[47] *Schmidt, supra* note 45.

[48] *Hatfield, supra* note 7.

*Birchfield* rendered the blood draw unlawful and inadmissible, and reversed, and remanded for a new trial. The State filed an exception proceeding, arguing the district court sitting as an appellate court had erred in reversing the conviction without considering whether the good faith exception applied. We agreed. We noted that application of the good faith exception to the exclusionary rule is a question of law on which an appellate court reaches a conclusion independent of the court below.[49] We then concluded, citing our decision in *State v. Hoerle*,[50] that the good faith exception applied to a warrantless pre-*Birchfield* blood draw, and we applied that exception to conclude the blood evidence in *Hatfield* was admissible. We thus sustained the State's exception, reversed the district court's order, and remanded the matter for further proceedings.

These cases illustrate that when the applicability of the good faith exception involves examination of the same basic facts as the probable cause inquiry, an appellate court generally is able, as part of its de novo review, to determine the legal question of good faith on the existing record. Because we conclude this is such a case, we find no merit to Kruse's argument that the *Leon* good faith exception could not be considered on appeal because it was not first raised before the trial court. We emphasize, however, that the record may not always be sufficient to allow an appellate court to determine the applicability of the good faith exception when it is raised for the first time on appeal. For that reason, it is advisable to raise the exception to the trial court whenever it is considered applicable.

We turn now to Kruse's argument that the good faith exception does not apply here because the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

---

[49] *Id.*

[50] *Hoerle, supra* note 11.

### 3. Good Faith Exception Applies

[12] When evaluating whether the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, an appellate court should address whether the officer, considered as a police officer with a reasonable knowledge of what the law prohibits, acted in objectively reasonable good faith in relying on the warrant.[51] The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."[52] Officers are assumed to "have a reasonable knowledge of what the law prohibits."[53] In assessing the good faith of an officer's conducting a search under a warrant, an appellate court must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit.[54]

Here, the record shows Officers Parmer and Johnson responded to the scene of a motor vehicle accident and found Kruse unresponsive behind the wheel of one of two cars at the scene. Johnson smelled alcohol on Kruse's breath and noticed that Kruse's eyes appeared bloodshot and watery. Emergency medical personnel treating Kruse at the scene told the officers that Kruse had the odor of alcohol on his breath, and Parmer observed Kruse to be incoherent. Based on this information, the officers believed there was probable cause to conclude Kruse had been operating a motor vehicle under the influence of alcohol, and they applied for a search warrant to obtain a sample of Kruse's blood to test his blood alcohol content. The affidavit submitted in support of the warrant did not expressly state that Kruse was the driver of one of the

---

[51] *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012).

[52] *Leon, supra* note 1, 468 U.S. at 922 n.23.

[53] *Id.*, 468 U.S. at 920 n.20.

[54] *Tompkins, supra* note 14.

vehicles involved in the accident, but the officers reasonably believed him to be so, and reasonably believed he had been drinking alcohol prior to the accident. A county court judge issued the search warrant, and officers proceeded to the hospital where they promptly executed the warrant.

Under the totality of the circumstances in this case, we find the officers acted in objectively reasonable good faith in reliance upon the search warrant. We conclude that the *Leon* good faith exception applies and that there was no need to exclude the blood evidence seized pursuant to the warrant. The district court did not err in affirming the judgment of the county court.

## V. CONCLUSION

We do not decide whether the affidavit in this case was sufficient to support a finding of probable cause, because we conclude that, even assuming the warrant was invalid, the *Leon* good faith exception applied and that exclusion of the blood evidence was not required. Accordingly, we affirm the decision of the district court.

Affirmed.